1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE HP ERISA LITIGATION,

_____/

This Document Relates To: 12-6199
                          12-6410
                          13-0301

_____/

Master File No. C-12-6199 CRB

**ORDER GRANTING MOTION TO DISMISS**

Defendant Hewlett-Packard ("HP"), various HP subsidiaries, and eight individual defendants who are current and former HP executives and general counsels, (collectively "Defendants") move the Court to dismiss this ERISA action.  The suit stems from HP's acquisition of British software company Autonomy Corporation plc ("Autonomy") and the subsequent write-down of approximately $9 billion of HP's assets.  Plaintiffs' claims include breach of duty of loyalty, breach of duty of prudence, and several derivative claims.  The motions to dismiss argue, in brief, that: (1) Plaintiffs have sued the wrong fiduciaries; (2) the Moench presumption of prudence applies; (3) Defendants made no false or misleading fiduciary statements and had no duty to disclose nonpublic information; and (4) because the underlying claims fail, the derivative claims must be dismissed.  Because the the Moench presumption of prudence applies, and because it was not improper for Defendants to take the time to investigate prior to making any disclosures, the Court GRANTS the motions to dismiss without prejudice.[1]  The Court also GRANTS the unopposed Requests for Judicial Notice (dkts. 79, 83).

_____

[1] At the February 28, 2014 hearing, Plaintiffs explained that new press reports and evidence have come to light since the filing of the Consolidated Am. Compl. (dkt. 50) ("Compl.") and that this new material will allow them to amend to address deficiencies.  See Transcript (dkt. 115) at 20:12-23.  Thus, the Court GRANTS leave to amend.

1

## I.      BACKGROUND

2       This Court is familiar with the details of HP's acquisition of Autonomy.  There is no

3  need to recite the details of that history again here.  However, because this suit was filed

4  under The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461

5  ("ERISA"), background on HP's retirement plan is relevant.

6  ### A.      The Plan

7       HP sponsors a 401(k) retirement plan (the "Plan") for its employees.[2]  The Plan is

8  governed by the HP Company 401(k) Savings Plan, as amended and restated as of January 1,

9  2007, and as amended and restated as of January 1, 2012 (the "Plan Document").  Compl.

10  ¶ 61.  The Plan Document identifies and names two fiduciaries for the Plan: the Plan

11  Committee for operation and administration of the Plan, and the Investment Review

12  Committee ("IRC") for control and management of the assets of the Plan.  Id. ¶¶ 42, 49.

13  Each of the named individual defendants was a member of the IRC while employed by HP

14  during the class period.  Id. ¶¶ 42-48.

15       As the Plan sponsor, HP does not hold the Plan's assets, run the plan, or make

16  investment choices for the Plan.  Conway Decl., (dkt. 82) Ex. B at 1.  Fidelity Management

17  Trust Company holds the Plan's assets in trust.  Plan participants have the option of making

18  voluntary contributions to their accounts which HP matches dollar-for-dollar up to the first

19  four percent of a participant's eligible compensation.  Conway Decl., Ex. C at 4.  Plan

20  participants may invest their contributions, and HP's matching contributions, in a variety of

21  offerings as determined by the IRC which the Plan Document divides into two categories:

22  Investment Funds[3] and the dedicated HP Stock Fund.  Conway Decl., Ex. A §§ 9(a), 9(b),

23  16(b).  Under the Plan, participants decide how to allocate their retirement savings and may

24  reallocate their savings freely.  Conway Decl., Ex. C at 22, 25-27.

25

26       [2] HP also authored and issued Summary Plan Descriptions to Plan participants. Id. ¶ 87.  The Summary Plan Description dated January 1, 2012 ("SPD") specifically incorporates HP's previous and future SEC filings as fiduciary communications to Plan participants.  Id. ¶ 88.

27

28       [3] In 2012, the IRC permitted investment in 27 funds in addition to the HP Stock Fund, including money market funds, bond funds, and mutual funds offered through Fidelity Investments.  Conway Decl., Ex. C at 25-27.

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    This lawsuit focuses on the HP Stock Fund.  The HP Stock Fund is an employee stock

2    ownership plan (ESOP) which, under ERISA, is required to invest exclusively in HP stock.[4]

3    As an ESOP, the HP Stock Fund, consistent with the intent of Congress in enacting ERISA,

4    provides a simple way for HP employees to directly invest in the company they work for.

5    See generally Quan v. Computer Sciences Corp., 623 F.3d 870, 879  n.7 (9th Cir. 2010)

6    (noting that Congress intended for ESOPs "to reward and motivate employees by making

7    them stakeholders in the success of the companies that employ them").  Though ERISA

8    requires that this ESOP invest exclusively in HP stock, the Plan Document gives broad

9    discretion to the Trustee regarding the "time, price, amount and manner of purchase of Stock

10   for the Stock Fund."  Conway Decl., Ex. A § 9(b).  Determining the extent to which the

11   various parties had the power (and fiduciary duty) to choose not to invest HP Stock Fund

12   assets in HP stock is at the heart of this litigation.

13   **B.    The Parties**

14   Plaintiffs are former HP employees and participants in HP's 401(k) Stock Fund.

15   Plaintiffs purchased HP stock through the Plan during the Class Period.  Plaintiffs allege that

16   they suffered losses from purchasing and holding HP stock, rather than purchasing or

17   diversifying into other investment options under the Plan.[5]  Compl. ¶¶ 31-33.

18   Defendant Shoreline Investment Management Company ("Shoreline") is an

19   investment management company that is a wholly owned subsidiary of HP and an SEC

20   registered investment advisor.  Compl. ¶¶ 50-51.  During the Class Period, the IRC delegated

21   authority and responsibilities to Shoreline.  Id. ¶ 52.  Plaintiffs allege that "[b]y this

22   delegation, Shoreline became a co-fiduciary with authority and discretion over the HP

23

24

25   [4] The parties agree that to qualify as an ESOP the HP Stock Fund is required to invest
     exclusively in HP Stock.  Compare Mot. to Dismiss (dkt. 81) at 2 with Opp'n to Mot. to Dismiss (dkt.
26   98) at 7.  They dispute whether the Plan required that the HP Stock Fund be available as an investment
     option.
27

28   [5] Note that a Plan participant who invested in the HP Stock Fund immediately after the
     Autonomy deal was announced and held that investment until the present day would have made a profit
     of approximately 40 percent. See infra n. 6.

**United States District Court**
For the Northern District of California

1    common stock fund" and that "HP also became a *de facto* fiduciary through its ownership

2    and control of Shoreline.  Id. ¶ 53.

3        State Street Bank and Trust Company ("State Street") is a trust company which

4    provides services to mutual funds, pension funds, insurance companies, and other financial

5    entities.  During the Class Period, State Street served as the investment manager for the HP

6    Common Stock Fund and was a co-fiduciary and independent investment manager.  State

7    Street is not a defendant.  Id. ¶¶ 54-55.  State Street "ha[d] no discretion as to whether to

8    continue the availability of [the HP Stock] Fund as an investment option."  Conway Decl.,

9    Ex. G at 1.

10       Defendant Catherine A. Lesjak was HP's Chief Financial Officer during the Class

11   Period and the Chair of the IRC.  Compl. ¶ 42.  Defendant John N. McMullen, was HP's

12   Treasurer during the Class Period.  McMullen was also the President of Shoreline Investment

13   Management Company.  Id. ¶ 43.  Defendant James T. Murrin was HP's Controller from the

14   start of the Class Period until March 2012.  Id. ¶ 44.  Defendant Mark A. Levine was HP's

15   Controller from March 2012 through the end of the Class Period.  Id. ¶ 45.  Defendant

16   Michael J. Holston was HP's General Counsel from the start of the Class Period until

17   December 2011.  Id. ¶ 46.  Defendant David W. Healy was HP's General Counsel from

18   December 2011 until April 2012.  Id. ¶ 47.  Defendant John F. Schultz was HP's General

19   Counsel from April 2012 through the end of the Class Period.  Id. ¶ 48.

20       Defendants Lesjak, McMullen, Murrin, Levine, Holston, Healy, and Schultz were

21   named fiduciaries under the Plan.  Id.  ¶¶ 42-48.  Defendants McMullen, Murrin, Levine,

22   Holston, Healy, and Schultz were also members of the Plan Committee.  Id. at 49.

23       **C.    This Court's Ruling in the Related Securities Litigation**

24       On December 10, 2013 this Court ruled on motions to dismiss in a related securities

25   litigation case based on the same underlying facts.  In re HP Securities Litigation, No. 12-

26   5980 (dkt. 201) ("Order").  This Court issued an order granting in part and denying in part

27   the motions to dismiss.  Specifically, the Court rejected all claims involving statements made

28   prior to May 23, 2012, and all claims regarding statements made by Lesjak.  Id.  There,

however, the Court assumed, without deciding, the falsity of the statements at issue because its "ruling hinge[d] primarily on the issue of scienter." Id. at 8. As Plaintiffs emphasized at the hearing on this motion, here, they need not plead scienter. See Transcript at 10:22-24.

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, a Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

The claims for breach of fiduciary duty that Plaintiffs assert are governed by ERISA, which requires fiduciaries of retirement plans to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries" and to do so "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1).

Claims for fraud must meet the pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires an account of the time, place, and specific content of the false representations as well as the

1    identities of the parties to the misrepresentations." <u>Swartz v. KPMG LLP</u>, 476 F.3d 756, 764

2    (9th Cir. 2007) (internal quotation marks omitted).

3    **III.    DISCUSSION**

4         **A.    Plaintiffs Named the Appropriate Fiduciaries**

5         The first issue before the Court is whether Plaintiffs named the appropriate fiduciaries

6    as defendants.  Under § 405(c)(2) of ERISA, when a "named fiduciary" delegates

7    responsibilities to an independent fiduciary, "then [the] named fiduciary shall not be liable

8    for an act or omission of such person in carrying out such responsibility except to the extent

9    that the named fiduciary violated section 1104(a)(1)."  29 U.S.C. § 1105(c)(2).  Defendants

10   argue that HP's delegation of fiduciary authority to State Street Bank "to direct the

11   investment and reinvestment of the assets credited to the [HP Stock] Fund" provided a safe

12   harbor for Defendants and requires dismissal.  Mot. to Dismiss at 14 quoting Conway Decl.,

13   Ex. F at 1.  This argument fails because the alleged breaches of fiduciary duty relate to

14   actions, statements, or omissions of the members of the IRC and the Plan Committee.  To the

15   extent Plaintiffs allege that the breach of fiduciary duty was caused by the continued offering

16   of the HP Stock Fund as an investment option for HP employees during the class period,

17   Compl. ¶¶ 2, 358, and or by false and misleading SEC filings or omissions, <u>id.</u> ¶¶ 173-74,

18   190, 210-15, Plaintiffs have named the appropriate defendants.  HP's 2008 401(k) plan

19   guidelines for the HP Stock Fund specifically prohibit State Street Bank from deciding

20   whether to continue the availability of the Stock Fund as an investment option.  Conway

21   Decl., Ex. G at 1.  Therefore, HP and HP's officers, rather than State Street Bank, are the

22   appropriate defendants here.

23        **B.    The <u>Moench</u> Presumption of Prudence**

24        The next issue before the Court is whether the <u>Moench</u> presumption of prudence

25   applies.  In <u>Moench</u>, the Third Circuit addressed the question, "[t]o what extent may

26   fiduciaries of [ESOPs] be held liable under [ERISA] for investing solely in employer

27   common stock, when both Congress and the terms of the ESOP provide that the primary

28

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    purpose of the plan is to invest in the employer's securities[?]"[6]  Moench v. Robertson, 62

2    F.3d 553, 556 (3d Cir. 1995).  The court concluded that only "in limited circumstances,

3    ESOP fiduciaries can be liable under ERISA for continuing to invest in employer stock

4    according to the plan's direction."  Id.  The Ninth Circuit "adopt[ed] the Moench

5    presumption because it provides a substantial shield to fiduciaries when plan terms require or

6    encourage the fiduciary to invest primarily in employer stock."[7]  Quan, 623 F.3d at 881.[8]

7    Thus, when an employee benefit plan requires or encourages investment in employer's stock,

8    plan fiduciaries are entitled to a strong presumption that they satisfied ERISA's prudence

9    mandate by permitting plan participants to invest in their employer's stock.  Id. at 879-81.

10        Here, the Plan requires that the HP Stock Fund be an ESOP offered as an investment

11   option for Plan participants.  Conway Decl., Ex. A §§ 9(b), 10(a).  Plaintiffs argue that the

12   Moench presumption does not apply here "because the HP Plan did not require or strongly

13   encourage investment in the stock fund."  Opp'n to Mot. to Dismiss at 34.  This argument

---

14

15        [6] The question arose because of Congress' decision to incentivize employee ownership of their
     employer's stock.  "Congress, believing employees' ownership of their employer's stock a worthy goal,
16   has encouraged the creation of ESOPs both by giving tax breaks and by waiving the duty ordinarily
     imposed on trustees by modern trust law . . . to diversify the assets of a pension plan."  Steinman v.
17   Hicks, 352 F.3d 1101, 1103 (7th Cir. 2003).  Recognizing that concentration of retirement assets in a
     single security is inherently risky, Congress expressly exempted fiduciaries of ESOPs and other eligible
18   individual account plans from the statutory duty in ERISA to diversify retirement plan assets.  ERISA
     § 404(a)(2), 29 U.S.C. § 1104(a)(2).

19        [7] The Ninth Circuit's rationale in adopting the Moench presumption squarely applies here:
20   "Fiduciaries are not expected to predict the future of the company stock's performance; without the
     Moench presumption, a fiduciary could be sued for not selling if he adhered to the plan [and the
21   company stock dropped], but also sued for deviating from the plan [and selling] if the stock rebounded.
     Moreover, the long-term horizon of retirement investing requires protecting fiduciaries from pressure
22   to divest when the company's stock drops.  The Moench presumption should also make it less likely that
     a plan fiduciary would be tempted to use insider information to divest the plan from company stock,
23   since continued investment in the plan will be presumed prudent."  Quan, 623 F.3d at 881-82 (internal
     quotations and citations omitted).  See also supra n. 4.

24        [8] The Supreme Court recently heard argument on the question of "Whether the Sixth Circuit
25   erred by holding that Respondents were not required to plausibly allege in their complaint that the
     fiduciaries of an employee stock ownership plan ("ESOP") abused their discretion by remaining
26   invested in employer stock, in order to overcome the presumption that their decision to invest in
     employer stock was reasonable, as required by the Employee Retirement Income Security Act of 1974,
27   29 U.S.C. §§ 1101, et seq. ("ERISA"), and every other circuit to address the issue."  Fifth Third Bancorp
     v. Dudenhoeffer, 692 f.3d 410 (6th Cir. 2012), cert. granted 134 S. Ct. 822 (Dec. 13, 2013) (No. 12-
28   751).  Oral argument was heard on April 2, 2014.  In the event that the Supreme Court's decision in
     Fifth Third Bancorp substantially alters the Moench presumption, this Court will entertain a motion to
     reconsider.

**United States District Court**
For the Northern District of California

hinges on Plaintiffs' reading of the Plan as providing the IRC "the power to terminate, hold purchases of, or transfer assets out of the stock fund." Id. at 35. Plaintiffs rely on § 9(f) of the Plan document which gives the IRC (or the Plan Committee) the power "to impose from time to time any restrictions or limitations on any or all Participants' ability to direct the investment of his, her or their Accounts into or out of a certain Fund or Funds as the Plan Committee or the IRC may deem appropriate in its sole and absolute discretion. Compl. ¶ 63; Conway Decl., Ex. A § 9(f); Opp'n to Mot. to Dismiss at 35 (emphasis added). Plaintiffs sum up the divergent readings of the Plan:

> Defendants argue that this provision only applies to Section 9(a) funds[9] by virtue of the definition of the capitalized term "Funds." [Mot. to Dismiss at 16-17.] But defendants ignore the second capitalized term, "Fund," which is not elsewhere defined. The only intelligible reading of this term "Fund" is as a reference to the one other "Fund" in the Plan Document that is defined–the Stock Fund.

Opp'n to Mot. to Dismiss at 35-36. Plaintiffs' reading of the Plan is unpersuasive.

Section 9 of the Plan distinguishes between the HP Stock Fund and all the other Funds available through the Plan. Conway Decl., Ex. A § 9. The Funds other than the HP Stock Fund are addressed in § 9(a) which gives the IRC broad discretion to add, remove, or modify the investment Funds available. Id. Section 9(b), which applies to just the HP Stock Fund, provides no such discretion to the IRC and instead mandates that the "Stock Fund shall be invested and reinvested primarily in [HP] Stock." Id. § 9(b). Read together, these two sections unequivocally provide the IRC with broad discretion as to all investment Funds offered under the Plan except for the HP Stock Fund. Plaintiffs' attempt to construe § 9(f) to the contrary falls short. Section 9(f) authorizes the Plan Committee or the IRC to restrict or limit Plan participants' ability to direct investments "into or out of a certain Fund or Funds." A plain reading of the language suggests that "Fund" is simply the singular of "Funds." Plaintiffs' argument that "Fund" must refer to the HP Stock Fund is inconsistent with the language in Sections 9(a) and (b), and the presumption that the same word or phrase is used consistently throughout the document: elsewhere the Plan refers to the HP Stock Fund as the "Stock Fund."

---

[9] The various investment funds available to Plan participants other than the HP Stock Fund.

United States District Court
For the Northern District of California

Plaintiffs next argue that the <u>Moench</u> presumption does not apply here by relying on <u>Harris v. Amgen</u>, 738 F.3d 1026 (9th Cir. 2013).  Opp'n to Mot. to Dismiss at 36-37.  In <u>Amgen</u>, the Ninth Circuit held that the presumption of prudence did not apply because "[t]here is no language in the Plans requiring that a Company Stock Fund be established as an available investment for plan participants.  Nor is there language in the Plans requiring that a Company Stock Fund, once established, be continued as an available investment." <u>Id.</u> at 1037-38.  Not so here where § 9(b) of the Plan requires the establishment and maintenance of the HP Stock Fund.  <u>See also</u> Conway Decl., Ex. A § 10 (establishing the HP Stock Fund). Thus, <u>Amgen</u> does not control here[10] and the <u>Moench</u> presumption of prudence applies.[11] "To overcome the presumption of prudent investment, plaintiffs must therefore make allegations that clearly implicate[ ] the company's viability as an ongoing concern or show a precipitous decline in the employer's stock . . . combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." <u>Quan</u>, 623 F.3d at 882 (internal quotations omitted) (alterations in original).  Plaintiffs make no such allegations here.  Therefore, the Court finds that the <u>Moench</u> presumption applies and GRANTS the Motion to Dismiss the prudence claim.

**C.     Disclosure Claims**

The next issue before the Court is whether Plaintiffs have stated a claim that Defendants violated their ERISA duties of disclosure by omitting to disclose material information about the problems with Autonomy.  <u>See, e.g.</u>, Compl. ¶¶ 296, 299, 329, 382.

All of Defendants' statements and omissions at issue here were made either before Whistleblower No. 4 came forward, or while the investigation into Whistleblower No. 4's allegations was ongoing.  As this Court noted in the securities case Order:

---

[10] <u>Amgen</u> is also distinguishable because there plaintiffs in the parallel securities fraud case had survived a motion to dismiss, plausibly alleging that the defendants, all of whom were ERISA fiduciaries, had made false statements of material fact in SEC filings with scienter. 717 F.3d at 1050-51. Here, plaintiffs in the parallel securities-fraud case had most of their case dismissed.  Order.

[11] Plaintiffs concede that if the <u>Moench</u> presumption applies, their prudence claims fail.  Supp. Opp'n to Mot. to Dismiss (dkt. 106) at 3.

1

2

3

4

5

6

Whistleblower No. 4's allegations required time to investigate–the PwC investigation took approximately six months.  Compl. ¶ 141. "Taking the time necessary to get things right is both proper and lawful.  Managers cannot tell lies but are entitled to investigate for a reasonable time, until they have a full story to reveal." Higginbotham[ v. Baxter Int'l Inc.], 495 F.3d [753,] 761 [(7th Cir. 2007)].  Defendants have no obligation to prematurely report allegations, even if well-founded; nor would Defendants have been able to accurately determine the true amount of the required write-down absent a thorough investigation."

Order at 17.  That reasoning controls here.[12]

7    Plaintiffs argue that the "fiduciary duty of loyalty not only requires that a fiduciary put

8  the interests of those to whom she owes the duty above her own interests, but that she 'has an

9  obligation to convey complete and accurate information material to the beneficiary's

10 circumstance, even when a beneficiary has not specifically asked for the information.'"

11 Opp'n to Mot. to Dismiss at 26 quoting Barker v. Am. Mobil Power Corp., 64 F.3d 1397,

12 1403 (9th Cir. 1995).  Nevertheless, as in the securities case, a fiduciary cannot "convey

13 complete and accurate information" until she has had adequate time to investigate.  Even

14 then, nothing "require[s] plan fiduciaries to disclose nonpublic information regarding the

15 expected performance of a plan investment option."  In re Citigroup ERISA Litig., 662 F.3d

16 128, 143 (2d Cir. 2011).

17    At the hearing, Plaintiffs argued that, at a minimum, Defendants should have told Plan

18 participants about Lesjak's opposition to the Autonomy acquisition.  See Transcript at 15:1-

19 7.  It is true that, unlike Whistleblower No. 4's allegations, Lesjak's opposition to the

20 acquisition required no investigation.  However, Plaintiffs' argument would effectively

21 require that Plan participants become boardroom participants.  No law requires a board to

22 invite every shareholder or employee to observe proceedings or be privy to disagreements.

23    It is difficult to separate out the interests of the HP Stock Fund participants from the

24 interests of any HP shareholder.  If Defendants had been able to terminate or suspend the HP

25 Stock Fund as a result of concerns over Autonomy, the impact of such a termination or

26 suspension on the price of HP stock, including that already owned by the HP Stock Fund,

27

28

[12] CEO Meg Whitman, whose post-May 23 statements the Court found to be actionable in the securities case, is not a defendant here, nor was she a Plan fiduciary at any time.  See Opp'n to Mot. to Dismiss at 33, n. 15.

United States District Court
For the Northern District of California

1  likely would have been dire.  Nor could HP have prevented employees from buying stock

2  without disclosing as much to the market.  "[F]iduciaries are under no obligation to violate

3  securities laws in order to satisfy their ERISA fiduciary duties. . . . Moreover, plan

4  participants are not entitled to profit from artificially inflated stock prices or to avoid

5  financial loss by selling before public disclosure of a company's deteriorating health."  Quan,

6  623 F.3d at 882, n. 8.  In Amgen the Ninth Circuit noted that:

7
> compliance with ERISA would likely have resulted in compliance
> with the securities laws.  If defendants had revealed material
8  > information in a timely fashion to the general public (including plan
> participants), thereby allowing informed plan participants to decide
9  > whether to invest in the Amgen Common Stock Fund, they would
> have simultaneously satisfied their duties under both the securities
10 > laws and ERISA.

11 738 F.3d at 1042-43.  But here, the Court has already found that it was proper for Defendants

12 to take the time to investigate the allegations of fraud at Autonomy before making any public

13 disclosures.  See Order at 17.

14     Finally, Plaintiffs argue that "[a]t a minimum, the Court should sustain plaintiffs'

15 loyalty claims to the extent similar allegations were sustained under the higher pleading

16 standard" in the related securities litigation.  Supp. Opp'n to Mot. to Dismiss at 2.  There

17 were three statements that this Court found actionable in the securities litigation.  The parties

18 agree that the two statements made by Whitman are not at issue here because Whitman is not

19 a defendant and was never a plan fiduciary.  Transcript at 21:8-12.  The third statement this

20 Court found to be actionable in the securities case, a materially misleading declaration of the

21 value of Autonomy in HP's third quarter 2012 SEC form 10-Q, is at issue here.  The SPD

22 was issued in January 2012, months before Whistleblower No. 4 came forward in May and

23 longer still before the third quarter 10-Q was filed in September.  Plaintiffs argue that the fact

24 that the SPD predates the filing of the SEC form with the actionable statement is irrelevant

25 because the SPD incorporated by reference future SEC filings.  See Transcript at 21-22.

26     The issue, then, is whether incorporating by reference a future SEC filing can be the

27 basis for liability.  This Court is unaware of any Ninth Circuit case that addresses this precise

28 question, and the parties were unable to provide one.  Plaintiffs point to Amgen but in that

case the Ninth Circuit did not actually consider the issue of incorporating by reference future

United States District Court
For the Northern District of California

filings: the holding there was "that defendants' preparation and distribution of the SPDs, including their incorporation of Amgen's SEC filings by reference, were acts performed in their fiduciary capacities." Amgen, Inc., 738 F.3d at 1044.  But here the question is narrower and is limited to an SEC document filed well after several of the defendants had ceased to play a fiduciary role.  Defendants point to a Second Circuit decision in which that court considered an SPD which incorporated by reference future SEC filings which were at issue. Rinehart v. Akers, 722 F.2d 137, 152-53 (2013).  The Second Circuit held that even where the SPD explicitly incorporates by reference future filings, "Plaintiffs must still articulate a viable claim that," when the SPD was issued but before the SEC filings existed, "Defendants knew of false statements . . . yet to be contained in . . . the SEC filings . . . yet to be incorporated in[] the SPDs."  Rinehart v. Akers, 722 F.3d 137, 153 (2d Cir. 2013).  While the Court acknowledges that there is no clear rule in the Ninth Circuit, the Second Circuit's reasoning is persuasive.  As Plaintiffs pointed out at the hearing, plan participants should be able to rely on the SPD's incorporating by reference of future filings.  Transcript 22:4-10. But the fact that the SPD incorporates by reference future filings does not absolve Plaintiffs of their obligation to "articulate a viable claim that . . . Defendants knew" of the falsity at the time the SPD was distributed.  Here, the SPD was dated January 2012 and Whistleblower No. 4 did not make his allegations until May 2012.  Therefore, the Court GRANTS the motion as to the disclosure claims.

### D. Derivative ERISA Claims

In Counts II, IV, and V, Plaintiffs allege that Defendants failed to monitor their co-fiduciaries, failed to avoid conflicts of interest, and knowingly participated in co-fiduciaries' breaches of duty.  Compl. ¶¶ 363-70, 380-87.  These claims are derivative of the prudence and disclosure claims.  Because the Court GRANTS the motion as to the prudence and disclosure claims, the Court further GRANTS the motion as to these derivative claims.

IV.    **CONCLUSION**

For the foregoing reasons, the Court GRANTS the unopposed requests for judicial notice and GRANTS the Motion to Dismiss without prejudice.

**IT IS SO ORDERED.**

Dated: April 2, 2014                                     _____
                                                         CHARLES  R. BREYER
                                                         UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

13